IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JAY GORDON,<br><br>     Plaintiff,<br><br>v.<br><br>HOME DEPOT U.S.A., INC.<br><br>     Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING HOME DEPOT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:13-cv-855-JNP<br><br>District Judge Jill N. Parrish |

  Before the court is a Motion for Summary Judgment (Docket 93) filed by Defendant Home Depot, U.S.A., Inc. ("Home Depot"). The court held oral argument on the motion on March 29, 2016. At the conclusion of the hearing, the court took the motion under advisement. After considering the written submissions and the arguments presented at the hearing, the court issues this Memorandum Decision and Order Granting Defendants' Motion for Summary Judgment.

## INTRODUCTION

  Jay Gordon brings this action claiming that Home Depot terminated his employment in violation of Utah public policy, and that Home Depot violated both the Age Discrimination in Employment Act ("ADEA") and the Americans with Disabilities Act ("ADA"). Mr. Gordon alleges that he was fired because of his age, because he filed a workers' compensation claim, and because he requested a reasonable accommodation for his disability. Mr. Gordon also alleges that Home Depot did not provide him with a reasonable accommodation required under the ADA.

Home Depot moved for summary judgment arguing that Mr. Gordon's employment was terminated because of his poor customer service performance. It maintains that his termination was completely unrelated to Mr. Gordon's age, worker's compensation claim, or disability. Home Depot further argues that it provided Mr. Gordon with the reasonable accommodation that he requested pursuant to the ADA. For the reasons explained below, the court GRANTS Home Depot's Motion for Summary Judgment.

## FACTS

As a preliminary matter, the court expresses concern regarding the briefing in this case. In the plaintiff's response to the defendant's Statement of Undisputed Material Facts, and the defendant's response to plaintiff's Statement of Additional Material facts, the parties frequently purport to dispute the facts. However, as the court points out in footnotes, many of those alleged disputes are completely unsupported by the evidentiary record. Additionally, many of the facts included in the 94 pages of fact statements and responses are never even referenced in the argument sections of the briefs. The court concludes that any fact not referenced in the parties' argument is immaterial. The court therefore does not recite those facts in this opinion.

Finally, the convoluted nature of the statement of undisputed facts and the response to those facts is compounded by counsels' inappropriate commentary. Both parties acknowledge that many of the facts are "undisputed," but then proceed to include paragraphs of argument, additional facts, and characterizations. This type of commentary is inappropriate where a fact is undisputed. A party may not circumvent the page limits imposed on the argument section of a brief by including arguments in response to undisputed facts. Likewise, the local rules do not allow a party to add additional facts in response to a fact that is undisputed. Rather, counsel should include additional facts in the "Additional Facts" section contemplated by DuCivR 56-1(c)(2)(C).

A.     Mr. Gordon's Employment

Mr. Gordon was hired by Home Depot in July of 2008 as a Pro Account Sales Associate for a store in Park City, Utah. Mr. Gordon was 58 years old at the time. A year later, in July of 2009, Mr. Gordon received his first periodic review. Home Depot's periodic reviews include sections for ratings in various categories as well as an overall rating. The rating system used by Home Depot has three choices: "O" for "Top Performer," the highest rating; "V" for "Valued Associate," the middle rating; and "I" for "Improvement Needed," the lowest rating. Mr. Gordon received an overall rating of V, but he received a rating of I in two categories—"Respect" and "Solve." Both of these categories relate to customer service. Mr. Gordon admits that his July 2009 periodic review was an accurate description of his performance up to that point.[1]

In November of 2009, Mr. Gordon suffered a back injury while he was at work. Mr. Gordon immediately reported the injury to an assistant store manager, Kyle Brown. He subsequently filed for workers' compensation benefits. Mr. Gordon met with his store manager at the time, Dave Park, and together they completed an accident report and submitted a workers' compensation claim.[2] Mr. Gordon alleges that as a result of seeking workers' compensation benefits, Home Depot "was very angry" and "really didn't like" that he was seeking the benefits. Mr. Gordon also alleges that Home Depot wanted to "make an example" out of him.

Mr. Gordon's next periodic review occurred in December of 2009. Mr. Gordon was given an overall rating of I, because of poor customer service performance. He again received a rating of I for customer service in the "Respect" and "Solve" categories. The review stated that he had

---

[1] Mr. Gordon asserts that this fact is undisputed only to the extent that it refers to Mr. Gordon's overall rating of V. Mr. Gordon's deposition, however, makes clear that he admitted that the entire review, including the "positives and negatives," was "an accurate depiction of [his] performance up and to [that] point."

[2] Mr. Gordon disputes the characterization of this fact. But Mr. Gordon's deposition testimony clearly states that he filled out the report with Mr. Park.

received "two customer complaints about being rude to customers." When Mr. Gordon was asked in his deposition if this review "was discriminatory against [him] in any way," he responded "no." Similarly, when Mr. Gordon was asked if this review "was retaliatory against [him] in any way," he again responded "no."[3]

In January of 2010, Mr. Gordon received a discipline notice from his manager, Mr. Horne, for committing a "minor work rule violation." The notice stated that Mr. Gordon had checked out a Home Depot radio for his use, but had failed to return the radio at the end of his shift. It explained that "[f]ailure to return radios at the end of the shift could result in losing the radio and causing an unnecessary expense to the store."

In the middle of 2010,[4] Mr. Gordon requested an accommodation for his disability caused by his prior workplace injury. Specifically, Mr. Gordon requested a stool to use during his shifts. The formal paperwork for an accommodation was dated December 17, 2010. Mr. Gordon testified that he received the stool in February of 2011.[5] Mr. Gordon admits that the stool accommodated him, and that he needed no further accommodation. Mr. Gordon does claim, however, that he was mocked by other associates for using the stool. He claims that other associates would make remarks like "you can't sit on that stool; that's Jay's special stool."[6] Mr. Gordon also believes that he was "overly scrutinized on every little thing he did" because of his requested accommodation.

---

[3] Mr. Gordon asserts that this is a disputed fact and that he "does not concede that his December 2009 review was not discriminatory or retaliatory." But this assertion is completely unsupported by the record. In his deposition, Mr. Gordon admitted that the review was neither discriminatory nor retaliatory as stated above.

[4] Fact number 52 states that the request was made "in mid-2010" and that fact is undisputed by Mr. Gordon.

[5] Mr. Gordon purports to dispute this fact and argue that he was not provided the chair until several weeks later. This position is unsupported by the record. Mr. Gordon was directly asked if he received the chair "[i]n February of 2011" to which he responded "[y]es."

[6] Home Depot objects to this testimony as hearsay. The court overrules this objection because, although they are out of court statements, they are not being offered for the truth of the matter asserted.

Mr. Gordon's next performance review was in late December of 2010. Mr. Gordon received an overall rating of V. He received a rating of I, in the category of "Find." That customer service category had the following description: "Makes customers the first priority, actively seeks out customers, greets all customers, offers assistance." The review included a comment that "Jay has a good rapport with his customers and provides excellent knowledge for our customers from his years of experience." But it also stated that "Jay needs to focus on qualifying every customer before solving their problem, Jay has been observed several times directing customers to other departments on issues he could have resolved."

On April 13, 2011, Mr. Gordon told a customer he was assisting to go find "the big colored guy" in reference to an African-American Home Depot associate. Home Depot alleges that this was a violation of its respect policy. Mr. Gordon asserts that he did not mean to offend anyone and that he did not realize the term could be offensive. Home Depot investigated and obtained written statements regarding the incidents from two other employees, Scott Van Wagoner and Trent Whipple on April 13, 2011, and April 16, 2011, respectively.

On April 25, 2011, Mr. Gordon had a second injury at work. Mr. Gordon cut his left hand with scissors while opening a package for a customer. Another associate filled out the required paperwork reporting the injury.

On April 27, 2011, the store manager, Jason Kirk, faxed to Home Depot's Associate Advice and Counsel Group ("AACG") Mr. Van Wagoner's and Mr. Whipple's statements regarding Mr. Gordon's comment. The AACG advised that a Final Counseling was warranted instead of termination because it considered the incident to be the result of "generational blindness." On May 19, 2011, Mr. Gordon was formally disciplined for the April 13, 2011, incident. He was provided a "Performance / Discipline Notice" that stated:

> Describing a fellow coworker as ["the big colored guy"] is a
> violation of the Home Depot's respect policy that states it is a
> major work rule violation when an associate treats another
> associate in a disrespectful manner. This is a final documentation.
> Further violations of The Home Depot's Code of Conduct will
> result in termination of employment.[7]

Mr. Gordon was also required to take a class entitled "Respect For All People."

In June of 2011, Mr. Gordon received his next performance evaluation. He was again given an overall rating of I. Mr. Gordon received an I in the categories of Respect, Professionalism, and Time Management. As to the category of respect, the review states that "[m]ajor action [was] needed for improvement." Mr. Gordon was placed on a performance improvement plan as a result.[8]

The performance improvement plan states that the reason for the discipline is that there had been "more than one complaint from customers on Jay's interaction with [them] and how he comes across very gruff, and at times [is] referred to as rude."[9] The plan instructed Mr. Gordon to "address his attitude [towards] customers, [and] associates alike." Mr. Gordon acknowledged in writing that he received the plan.

In September of 2011, a customer came into the store and was assisted by Mr. Gordon. The customer told Mr. Gordon that her mother regularly received a 10% discount and requested that Mr. Gordon provide her with the same discount. Mr. Gordon refused to provide the

---

[7] Mr. Gordon disputes whether his conduct was a "major" violation of Home Depot policy. He also asserts that he was not informed that a further violation of Home Depot's Code of Conduct would result in the termination of his employment. Rather, he claims that he was informed "that he would be terminated if he discriminated against any other associate, not for any 'further violation.'" The Discipline Notice, however, clearly classifies the act as a "major" violation and states that any further violation of the Home Depot's Code of Conduct will result in termination. The contents of the notice cannot reasonably be disputed.

[8] Mr. Gordon disputes the characterization of these facts. But that dispute is unsupported by the record. The characterization above is an accurate reflection of the written review.

[9] Mr. Gordon disputes this fact saying that the notice "provides no specifics as to anything Mr. Gordon did or said to be called 'gruff' or 'rude,' other than referencing, again, the 'colored' remark." But Mr. Gordon cannot actually dispute that the notice states that customers had called him gruff and rude.

discount.[10] There were no other witnesses to this incident. The next day, the assistant store

manager, Tina Blackwell, received a customer complaint. Ms. Blackwell testified that the

customer's mother reported that Mr. Gordon had told her daughter in a rude manner "I don't

know who you think you are coming in and expecting 10% off all the time." Ms. Blackwell does

not know the name of the person who complained.[11]

      Following the complaint, Mr. Gordon gave a statement of his version of events. The store

manager, Mr. Kirk, reviewed the statements, consulted with the District Human Resources

Manager, Tyson Boyer, and consulted with Home Depot's AACG.[12] The AACG again

recommended that Mr. Gordon be placed on a Final Counseling. Mr. Kirk disagreed with this

recommendation and decided to terminate Mr. Gordon's employment. The notice of termination

stated that Mr. Gordon's employment was terminated "for violating the major work rule of

customer service." This final incident occurred less than three months after Mr. Gordon was put

on the performance improvement plan.[13] Mr. Gordon admits that he had demonstrated a history

of customer service deficiencies.[14] Mr. Gordon understood that if he did not improve his

---

[10] Mr. Gordon "disputes Home Depot's suggestion that Mr. Gordon's refusal to give the customer a discount was improper." But the relevant issue is now whether the discount should have been given. Rather, the issue was how Mr. Gordon treated the customer.

[11] Mr. Gordon asserts that this is a disputed fact and is unsupported by admissible evidence. He contends that Home Depot's reliance on Mr. Kirk's declaration is improper because Mr. Kirk testified that he has no information about who the customer was and has no documentation supporting the incident. Additionally, Mr. Gordon argues that this is double hearsay. Mr. Kirk's testimony as to the report that Ms. Blackwell made to him is admissible. It is not hearsay because it is not being offered for the truth of the matter asserted. Rather, it is being offered to show that Mr. Kirk received a report that another customer had complained about Mr. Gordon.

[12] Mr. Gordon purports to dispute this statement "to the extent Home Depot suggests the statements collected . . . provided a legitimate basis for Mr. Gordon's termination." But this is another attempt by Mr. Gordon to impermissibly argue inferences in the Statement of Undisputed Facts section of the memoranda.

[13] Mr. Gordon "disputes Home Depot's suggestion that he was an problem employee" in response to the statement "This final incident occurred just three months after [Mr.] Gordon was placed on a performance improvement plan." Contrary to Mr. Gordon's assertion, this is not a disputed fact. Rather, this is yet another attempt by Mr. Gordon to impermissibly argue inferences and "suggestions" in violation of the local rules.

[14] Mr. Gordon's assertion that this is a disputed fact is contradicted by the record. During his deposition, Mr. Gordon was asked "you would agree that you had demonstrated a history of customer service deficiencies" to which he responded "[y]es."

customer service, his employment could be terminated. In his deposition, Mr. Gordon admitted

that the decision to put him on a performance improvement plan was neither discriminatory nor

retaliatory.[15]

But Mr. Gordon does dispute the customer's allegations. Specifically, he maintains that

he was not rude to the customer. He believes that the decision to terminate him was due to his

age, workers' compensation claims and his request for an accommodation for his injury.

      B.      Home Depot's Policies and Procedures

Home Depot is a large home improvement retailer with stores throughout the United

States. Home Depot has an "Associate Advice and Counsel Group" (the "AACG") that is a

human resources component of the corporate headquarters. The AACG advises stores on

disciplinary actions. Ultimately, however, decisions on associate personnel issues are left to the

discretion of the store manager.

Home Depot has policies regarding employee discipline.[16] Those policies divide

"infractions" into categories of "Major Work Rule Violations" and "Minor Work Rule

Violations." Home Depot's Code of Conduct provides guidance on what constitutes a major or

minor work rule violation. According to the Code of Conduct, "[a] Major Work Rule Violation is

prohibited conduct that will normally result in termination of employment for a first offense."

The Code of Conduct then details six pages of examples of explanations regarding conduct that

would constitute a major violation.

---

[15] Mr. Gordon asserts that this is disputed and is not an accurate description of his testimony. But that assertion is belied by the deposition transcript. Mr. Gordon was asked: "The decision to put you on a PIP after receiving— subsequent to the racially inappropriate comment, to receiving multiple customer complaints, the decision to put you on a PIP rather than terminate you, do you think that was discriminatory against you?" Mr. Gordon responded "[n]o." Mr. Gordon was then asked "[d]o you think it was retaliatory against you in any way?" Mr. Gordon again responded "[n]o."

[16] The parties dispute whether the discipline scheme used by Home Depot is considered a "progressive discipline policy." Regardless of the phrasing, the mechanics of the discipline policy appear to be undisputed.

In contrast, "[a] Minor Work Violation is unacceptable behavior in the workplace that would normally result in discipline and may individually or cumulatively result in termination of employment depending on the seriousness of the offense(s)." The Code of Conduct then has four pages of examples and explanations regarding conduct that would constitute a minor violation. Additionally, the Code of Conduct details "guidelines" for discipline for minor work rule violations. There are four possible disciplinary actions: coaching, counseling, final counseling, and termination.

The Code of Conduct explains that "Coaching makes an associate aware that demonstrated behavior is inappropriate and not acceptable workplace conduct." This would involve "sitting down with the associate, describing the infraction, [and] the steps needed to correct it." Counseling is a "formal written notice to an associate that his/her behavior violates Company policy or procedure." Final Counseling

> occurs when an associate is put on notice that one more Code of Conduct or attendance violation will result in termination. A Final Counseling session takes place when an associate demonstrates a pattern of unacceptable behavior, repeatedly violates the Company's policies, and/or has received multiple Discipline Notices and/or commits a serious violation that warrants a Final Notice but not immediate termination.

Finally, termination "typically occurs as a result of a first offense" for Major Work Rule Violations. "For Minor Work Rule Violations, however, termination normally occurs after multiple violations of Company policy as the final step in the progressive discipline process."

Home Depot also has a policy to report all workplace injuries. Home Depot's policy for reporting accidents states that associates are to "[i]mmediately report all work-related injuries or illnesses to [their] store/location manager." Managers are then to "[p]romptly report a claim through the on-line incident reporting tool . . . within 24 hours of the work-related illness or

injury or immediately for incidents involving transport by ambulance." Store managers have the responsibility to make sure workers' compensation claims are properly completed, reported, and investigated.

If a Home Depot employee "needs more than first aid" or if the accident results in "days away from work," then it is considered an OSHA recordable event.[17] Individual Home Depot stores are charged $7,000 for each reported OSHA recordable event. An additional $2,000 is charged if the event is not reported within 72 hours. These charges are accrued to the store's operating expenses. Management bonuses are based, at least in part, on store profit. Additionally, individual stores receive incentives such as a barbecue or associate party for being "OSHA recordable free" for a certain number of days.

C.      EEOC and Utah Antidiscrimination and Labor Proceedings

On February 23, 2012, Mr. Gordon filed a Charge of Discrimination (the "Charge") with the Equal Employment Opportunity Commission and the Utah Antidiscrimination and Labor Division. The Charge alleged that Home Depot treated Mr. Gordon unfavorably because of his disability and that the Home Depot failed to provide Mr. Gordon with a reasonable accommodation for his disability. It also alleged that Mr. Gordon was subjected to retaliation for requesting an accommodation. Finally, the Charge alleged that Mr. Gordon was fired because of his age.

**LEGAL STANDARDS**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if, under the governing law, it could have an effect on the

---

[17] Home Depot asserts that this is "[u]ndisputed but incomplete and mischaracterized," and then proceeds to argue inferences and state additional facts in violation of the local rules.

outcome of the lawsuit. A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) (quoting *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013)). On a motion for summary judgment, the court "consider[s] the evidence in the light most favorable to the non-moving party." *Conroy v. Vilsack*, 707 F.3d 1163, 1170 (10th Cir. 2013) (quoting *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1037 (10th Cir. 2011)). However, "[w]hen the moving party has carried its burden, . . . its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quotations and citations omitted).

## ANALYSIS

Mr. Gordon has alleged causes of action for wrongful termination in violation of Utah public policy, violation of the ADEA, and violation of the ADA. The court will address each claim in turn.

## I.  Wrongful Termination in Violation of Utah Public Policy

Mr. Gordon claims that Home Depot terminated his employment in violation of Utah public policy. Specifically, he argues that his employment was terminated because he filed a workers' compensation claim for which he received benefits. Mr. Gordon was an at-will employee and, under Utah law, an employer "may terminate the employment for any (reason or no reason) except where prohibited by law." *Touchard v. La-Z-Boy, Inc.*, 148 P.3d 945, 948 (Utah 2006) (quoting *Hansen v. Am. Online, Inc.*, 96 P.3d 950, 952 (Utah 2004)). Thus, "an employer's decision to terminate an employee is presumed to be valid." *Id.* A discharged employee may overcome this presumption by showing that "the termination of employment constitutes a

violation of a clear and substantial public policy." *Id.* (quoting *Fox v. MCI Commc'ns Corp.*, 931 P.2d 857, 859 (Utah 1997)). The Utah Supreme Court has held that terminating employment because an employee has exercised rights under Utah's Workers' Compensation Act constitutes a "violation of a clear and substantial public policy." *Id.* at 949–54.

Under Utah law, it is the plaintiff's burden to establish a prima facie case of wrongful termination. "If the employee establishes a prima facie case, the employer must then articulate a legitimate reason for termination." *Ryan v. Dan's Food Stores, Inc.*, 972 P.2d 395, 405 (Utah 1998). The burden then shifts back to the plaintiff to show that "engaging in the protected conduct was a 'substantial factor' in the employer's motivation to discharge the employee." *Id.*

A.   Mr. Gordon has not established a prima facie case of wrongful termination in violation of Utah public policy.

Mr. Gordon has not established a prima facie case of wrongful termination in violation of Utah public policy. To establish a prima facie case of wrongful discharge "an employee must show (i) that his employer terminated him; (ii) that a clear and substantial public policy existed; (iii) that the employee's conduct brought the policy into play; and (iv) that the discharge and the conduct bringing the policy into play are causally connected." *Id.* at 404.

It is undisputed that Mr. Gordon has met the first three elements. First, Home Depot terminated Mr. Gordon's employment. Second, the Utah Supreme Court has held that there is a clear and substantial public policy regarding a worker's ability to file a claim for workers' compensation. *See La-Z-Boy*, 148 P.3d at 948–55. Third, it is undisputed that Mr. Gordon had filed a compensation claim before he was terminated.

Mr. Gordon has not, however, established "that the discharge and the conduct bringing the policy into play are causally connected." *Ryan*, 972 P.2d at 404. To show this causal connection in relation to the prima facie case, a plaintiff "need show only that the conduct

bringing the public policy into play 'was *a* cause of the firing.'" *Id.* (quoting *Wilmot v. Kaiser Aluminum and Chem. Corp.*, 821 P.2d 18, 29 (Utah 1991)).

Mr. Gordon advances two arguments to establish a causal connection between the filing of his workers' compensation claims and his termination. First, he claims that he was subject to a "pattern of hostility" after filing his claims. Second, he claims that Home Depot managers had a financial incentive to fire him in retaliation for his workers' compensation claims. The court will consider each of these arguments in turn.

As evidence of a pattern of hostility, Mr. Gordon points to the negative performance evaluations that he received after each of the workplace injuries he suffered. He asserts that he received a negative review by a manager less than two months after inquiring about workers' compensation benefits for his first injury in 2009. He also asserts that he was disciplined for calling a coworker "colored" after his second injury. Finally, he claims that his later poor performance reviews were in retaliation for his workers' compensation claim. These arguments, however, are not supported by the undisputed facts.

As an initial matter, there is a temporal disconnect between the protected activity and Mr. Gordon's termination. Mr. Gordon filed his first workers' compensation claim in December of 2009 and reported his second injury in April of 2011, but he was not discharged until October of 2011. Additionally, Mr. Gordon has provided no evidence that the injury he sustained in April 2011 when he cut his hand could have resulted in a workers' compensation claim for benefits. Rather, it appears that it was a minor injury that required no medical attention and did not result in any time off work.

Mr. Gordon asserts that the negative performance evaluations and discipline he received after his injuries evidence a pattern of hostility. But this argument is unsupported by the record.

Mr. Gordon's first performance evaluation occurred in July of 2009. Although he received a positive rating overall, he received the lowest possible rating in two categories of customer service. This evaluation occurred months before Mr. Gordon's first workplace injury. Mr. Gordon received his first overall negative rating two months after his first workplace injury. But Mr. Gordon admitted that this evaluation was neither retaliatory nor discriminatory in any way. Given this admission, and the fact that Mr. Gordon had received a poor customer service rating before his injury, these evaluations do not evidence a pattern of hostility that connects Mr. Gordon's discharge to his workers' compensation claims.

Mr. Gordon also argues that the discipline he received after each injury demonstrates a pattern of hostility. But again, this argument is unsupported in the record and is belied by Mr. Gordon's own admissions. Mr. Gordon argues that shortly after his first injury, he was disciplined for the "negligible" act of failing to return a radio he checked out. Although Mr. Gordon characterizes this as "negligible," he has provided no evidence to support that characterization. The discipline notice explains that failing to return checked-out radios can cost the store money. Additionally, Mr. Gordon has provided no evidence to suggest that other employees would not have been disciplined for the same conduct. Finally, Mr. Gordon does not appear to dispute that he failed to return the radio.

Mr. Gordon's final argument in support of his claims that he was subjected to a pattern of hostility is that he was not disciplined for calling a coworker "colored" until after he suffered his second workplace injury. But the undisputed evidence is that Home Depot began its investigation of the incident before Mr. Gordon's second injury.  Home Depot had already obtained Mr. Van Wagoner's and Mr. Whipple's statements before Mr. Gordon was injured. And Mr. Gordon has not provided the court with any evidence to suggest that any other associate would have been

treated more favorably for engaging in the same behavior. More importantly, Mr. Gordon does not dispute that he did refer to a coworker as "colored."

Even when taken as a whole and viewed in the light most favorable to Mr. Gordon, he has not demonstrated a pattern of hostility that is connected to his workers' compensation claims. Accordingly, he has not demonstrated any causal connection between either his November 2009 workers' compensation claim or his April 2011 injury report and his October 2011 termination.

Mr. Gordon also contends that Home Depot managers had a financial incentive to discourage employees from filing workers' compensation claims. He argues that this establishes a causal connection between his termination and his workers' compensation claim. But Mr. Gordon has failed to provide sufficient evidence to establish such a connection. It is undisputed that Home Depot assesses fines to stores that have OSHA recordable incidents. But Mr. Gordon has not demonstrated that either of his workplace injuries were OSHA recordable. Mr. Gordon also has not demonstrated how terminating his employment would have avoided the fines. Indeed it appears that even if Mr. Gordon's injuries were OSHA recordable, the store would still have been fined regardless of whether Mr. Gordon's employment was terminated.

Most importantly, however, Mr. Gordon has not provided the court with any evidence of how these fines would actually affect a manager's bonus. At oral argument, plaintiff's counsel was unable to answer the question of how a $7000 fine to a store would actually affect a manager's bonus. Defendant's counsel represented that because the store in which Mr. Gordon worked does approximately $30,000,000 in annual sales, a $7,000 fine would result in, at most, a $28 reduction in a manager's bonus. In short, Mr. Gordon has failed to provide evidence demonstrating that a Home Depot manager had sufficient financial incentive to terminate his employment because he had filed a workers' compensation claim. Thus, he has failed to

demonstrate that his filing of a workers' compensation claim in December of 2009 was a cause of his October 2011 termination.

B.     Home Depot has articulated a legitimate business reason for terminating Mr. Gordon's employment.

Even if Mr. Gordon could show that his filing a workers' compensation claim was a cause of his termination, Home depot has articulated a legitimate reason for the termination. Home Depot has produced relevant evidence showing that it terminated Mr. Gordon's employment "because of his history of customer complaints and repeated warnings to him about improving his treatment of customers." *Ryan*, 972 P.2d at 409. It is undisputed that Mr. Gordon received multiple customer complaints and had multiple negative performance evaluations. It is also undisputed that several months prior to his termination, Mr. Gordon violated Home Depot policy when he told a customer to go find "the big colored guy" in reference to another Home Depot associate. Mr. Gordon was subsequently placed on a performance improvement plan and informed that another violation of the Home Depot Code of Conduct would result in his termination. Mr. Gordon's employment was terminated in October of 2011 following another customer complaint.[18]

C.     Mr. Gordon cannot establish that his workers' compensation claim was a "substantial factor" in the termination of his employment.

Given that Home Depot has articulated a legitimate business reason for terminating Mr. Gordon's employment, Mr. Gordon is required to prove that his workers' compensation claim was a "substantial factor" in the termination of his employment. *Ryan*, 972 P.2d at 409. Mr. Gordon, however, does not squarely address this burden in his memorandum. Rather, in section II(C), Mr. Gordon argues that "Home Depot's alleged justification for terminating Mr. Gordon is

---

[18] The parties appear to dispute whether Home Depot actually received another customer complaint. But that factual dispute is immaterial to the question of whether Home Depot "*articulated* a legitimate reason for termination." *Ryan*, 972 P.2d at 409.

pretextual." That section cites to various Tenth Circuit opinions dealing with the burden-shifting framework that applies to employment discrimination claims under federal law. But Mr. Gordon's claim for wrongful termination is brought under Utah law where the relevant inquiry is not whether the justification is pretextual but "whether an employee's engaging in protected conduct was a substantial factor in motivating an employer to discharge the employee." *Id.* at 409–10. Nothing in Mr. Gordon's memorandum even purports to argue that the filing of his workers' compensation claim was a substantial factor in his termination.

As discussed above, Mr. Gordon has not demonstrated that his workers' compensation claim was even *a* cause of his termination. He similarly has not demonstrated that it was a substantial factor in his termination. Indeed, "the facts in this case, as a matter of law, could not support the conclusion that [Mr. Gordon's] engaging in a protected conduct was a substantial factor in [Home Depot's] deciding to terminate him." *Id.*

The Utah Supreme Court case of *Ryan v. Dan's Food Stores, Inc.* is analogous to the case at bar. 972 P.2d 395. In that case, Mr. Ryan, a pharmacist, alleged that he was terminated in violation of Utah public policy because he had contacted a public authority to report a questionable prescription. *Id.* at 409.  Dan's Food Stores argued that Mr. Ryan's employment was terminated for poor customer service. The court held that Mr. Ryan, as a matter of law, could not show that his report to the public authority was a substantial factor in his termination. Specifically, "[t]he undisputed facts show[ed] that Ryan had a history of customer complaints." *Id.* Dan's Food Stores reported three separate "instances where Ryan angered customers." *Id.* at 410. Mr. Ryan demonstrated no evidence connecting his report to the public authority with his termination. The Utah Supreme Court concluded that, "as a matter of law, Ryan cannot show by

a preponderance of the evidence that his [engaging in the protected conduct] was a substantial factor in Dan's motivation to terminate him." *Id.*

This case is analogous. Mr. Gordon has a history of customer complaints. Mr. Gordon had received negative reviews regarding customer service before his workplace injury and the filing of his workers' compensation claim. As discussed above, he has no evidence connecting his termination to his workers' compensation claim. Finally, it is undisputed that Mr. Gordon was reported for referring to a coworker as a "big colored guy." The court holds that, as a matter of law, Mr. Gordon cannot demonstrate that the filing of his workers' compensation claim was a substantial factor in his termination. Accordingly, Home Depot is entitled to summary judgment on this claim.

## II.    Age Discrimination Under the ADEA and Retaliatory Firing Under the ADA

Mr. Gordon next brings claims for age discrimination under the ADEA and retaliatory firing under the ADA. Specifically, he argues that he was fired because of his age and because he requested a reasonable accommodation under the ADA. Because the analytical framework under federal law is the same for both these claims, the court will consider them jointly.

Where, as here, a plaintiff does not have direct evidence of discrimination and must rely on circumstantial evidence, the court analyzes the plaintiff's claims under the *McDonnell Douglas* framework to determine whether the defendant is entitled to summary judgment. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Sanders v. Southwestern Bell Telephone, L.P.*, 544 F.3d 1101, 1106 (10th Cir. 2008) (applying the framework to age discrimination claim); *Proctor v. United Parcel Service*, 502 F.3d 1200, 1207–08 (10th Cir. 2007) (applying the framework to retaliatory discharge claim under the ADA). Under that framework, the plaintiff has the burden to establish a prima facie case of discrimination. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the termination. If

the employer articulates a legitimate reason, the burden returns to the plaintiff to demonstrate that the "proffered reason is a 'pretext masking discriminatory animus.'" *Proctor*, 502 F.3d at 1208 (quoting *Piercy v. Maketa*, 480 F.3d 1192, 1198 (10th Cir. 2007)).

In this case, the court holds that Home Depot has articulated a legitimate business reason for Mr. Gordon's termination and that Mr. Gordon cannot, as a matter of law, demonstrate pretext. Accordingly, the court need not determine whether Mr. Gordon sufficiently demonstrated a prima facie case of discrimination.

The burden of articulating a legitimate business reason for purposes of a discrimination claim under the ADA and ADEA is identical to the burden previously discussed in relation to a claim for wrongful termination in violation of Utah public policy. As discussed above, Home Depot has articulated a legitimate business reason for the termination of Mr. Gordon's employment. Specifically, Home Depot asserts that Mr. Gordon was fired due to a history of customer complaints regarding customer service, and for failing to correct the problem after being placed on a performance improvement plan.

Therefore, it is Mr. Gordon's burden to demonstrate pretext. Generally, a "plaintiff demonstrates pretext by producing evidence of such weakness, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Sanders*, 544 F.3d at 1106 (quoting *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1308 (10th Cir. 2005)). A plaintiff, however, is not limited to "any particular method of proof. Rather, when assessing whether a plaintiff has demonstrated pretext such that a jury could conclude that discrimination was the

true reason for the adverse employment action, [the court considers] the evidence as a whole."
*Id.*

Mr. Gordon has failed to demonstrate that a reasonable factfinder could conclude that Home Depot's proffered reason was pretextual. Mr. Gordon advances four arguments to demonstrate pretext: 1) that he was never rude to the customer whose complaint led to his termination, 2) that he was subjected to a pattern of retaliatory acts after he sought worker's compensation benefits, 3) that Home Depot's decision-makers were motivated by monetary factors, and 4) Home Depot's purportedly inconsistent justifications for Mr. Gordon's termination. Each of these arguments will be considered in turn.

First, Mr. Gordon argues that Home Depot's justification is weak because he was not rude to the customer who complained in October of 2011. Mr. Gordon argues that the weakness is demonstrated by the fact that the customer complaint was never recorded and that Home Depot is unable to name the customer who complained. Home Depot disputes this and argues that the customer's complaint regarding Mr. Gordon's rudeness was credible. What is not disputed, however, is that a customer did complain about the quality of service Mr. Gordon provided. It is also undisputed that Mr. Gordon had a history of customer complaints and poor evaluations regarding customer service. Likewise it is undisputed that earlier that year Mr. Gordon was placed on a performance improvement plan after referring to a coworker as a "big colored guy." Given the undisputed facts, Mr. Gordon's assertion of weakness in Home Depot's justification is marginal at best.

Second, Mr. Gordon argues that he was subject to a pattern of retaliation after he suffered his workplace injury. The court has already addressed this argument in connection with Mr. Gordon's claim for wrongful termination in violation of Utah public policy. Mr. Gordon's

argument of a pattern of retaliation is unsupported in the factual record. Specifically, Mr. Gordon's first negative evaluations occurred months before his workplace injury. And Mr. Gordon has provided no evidence to connect his negative reviews to any type of discrimination. Rather, Mr. Gordon admits that the reviews were largely merited due to customer complaints. Accordingly, this argument does not evidence any pretext.

Third, Mr. Gordon argues that Home Depot stores were assessed monetary penalty charges when employees suffered "OSHA recordable" injuries. He contends that the existence of this penalty would allow a jury to infer that he was fired because the Home Depot store would be assessed penalties because of his injury. It is undisputed that Home Depot does assess a fine to the local store for all OSHA recordable injuries and for the late reporting of any reportable injury. But as was discussed above, Mr. Gordon has not provided any evidence that his discharge avoided any fines levied due to his workplace injuries. Without such evidence, it is unclear how there was any monetary incentive for the store manager to terminate Mr. Gordon's employment. Additionally, Mr. Gordon has not even alleged that the injury he sustained by cutting his had with scissors was OSHA recordable. And Mr. Gordon's first workplace injury occurred almost two years prior to his termination. Thus the penalty system imposed by Home Depot does not provide evidence of pretext in this case.

Finally, Mr. Gordon argued that purported inconsistencies in Home Depot's justification for his termination demonstrate pretext. While it is true that a "change in explanation occurring after significant legal proceedings have occurred supports an inference of pretext," Mr. Gordon has not demonstrated any inconsistencies in this case. *Sanders*, 544 F.3d at 1117. In the one-paragraph argument on this point, Mr. Gordon asserts:

> "Home Depot now alleges it terminated Mr. Gordon because of his 'long history of poor customer service.' [But] Home Depot's

> termination note . . . states 'Jay is being terminated for violating
> the major work rule of customer service.' . . . Since this litigation
> has started, Home Depot has included Mr. Gordon's past
> performance reviews to bolster its alleged reason for terminating
> him."

The court sees no inconsistency in Home Depot's position. Home Depot has consistently

maintained that Mr. Gordon's employment was terminated due to poor customer service. The fact

that Home Depot is also relying on past performance reviews demonstrating customer service

deficiencies is not inconsistent with its position that Mr. Gordon was terminated for his poor

customer service. Thus Mr. Gordon's argument fails to evidence pretext.

In conclusion, Mr. Gordon has failed to provide any admissible evidence that Home

Depot's asserted justification for the termination was pretextual. No reasonable "jury could

conclude that discrimination was the true reason for the adverse employment action," and Home

Depot is entitled to summary judgment on these claims. *Sanders*, 544 F.3d at 1107.

## III.   Failure to Accommodate Under the ADA

Mr. Gordon's final claim is that Home Depot failed to provide a reasonable

accommodation for his disability as required by the ADA. Mr. Gordon argues that Home Depot's

delay in providing him the stool he requested constituted a failure to accommodate under the

ADA. For a claim under the ADA to be timely, however, the plaintiff "must have filed an

administrative charge within 300 days of the challenged employment action." *See Proctor*, 502

F.3d at 1206; *Henderson v. Ford Motor Co.*, 403 F.3d 1026, 1032 (8th Cir. 2005) (holding that a

plaintiff "must file a charge of discrimination—including failure to accommodate—within 300

days of the alleged discrimination"); 42 U.S.C. § 12117 (applying the 300-day statute of

limitations listed in 42 U.S.C. 2000e–5(e) to ADA claims).

Mr. Gordon filed his charge of discrimination on February 23, 2012. It is undisputed that

Mr. Gordon received the accommodation he requested—the stool—in February of 2011. Because

Mr. Gordon did not file his administrative charge until more than 300 days from the time he received the stool, Home Depot's alleged delay in providing the accommodation that is time-barred. Given that Mr. Gordon failed to timely file a claim for failure to accommodate, Home Depot is entitled to summary judgment on this claim.

## CONCLUSION

Mr. Gordon has failed to demonstrate that a disputed issue of material fact exists as to whether his workers' compensation claim was a substantial factor in his termination. For that reason, Home Depot is entitled to summary judgment on Mr. Gordon's claim of wrongful termination in violation of Utah public policy. Mr. Gordon has also failed to demonstrate that a reasonable jury could find that Home Depot's purported justification in firing Mr. Gordon was pretextual. Therefore, Home Depot is entitled to summary judgment on Mr. Gordon's claims that he was terminated in violation of the ADA and the ADEA. Finally, Mr. Gordon's claim that Home Depot failed to provide him with a reasonable accommodation as required by the ADA is time barred. Accordingly, Home Depot's Motion for Summary Judgment is GRANTED. (Docket 93).

Signed June 1, 2016.

BY THE COURT

Jill N. Parrish
United States District Court Judge

23